UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CRESCENT TOWING AND SALVAGE CO., INC., ET AL.** | **CIVIL ACTION** |
| | **NO. 11-131 C/W 11-175** |
| VERSUS | **REF: 11-131** |
| M/V AMERICANA, her engines, tackle, and appurtenances, etc., *in rem* | **SECTION I** |

# ORDER

Before the Court is a motion[1] to stay the interlocutory sale of the vessel M/V AMERICANA ("AMERICANA") filed by defendant, Calmore Management Ltd. ("Calmore"), owner and claimant of the AMERICANA. Plaintiff-intervenor, Buck Kreihs Marine Repair, L.L.C. ("Buck Kreihs"), has filed an opposition.[2] For the following reasons, the motion to stay the interlocutory sale is **GRANTED**.

## *BACKGROUND*

The facts of this case are set forth in the Court's previous order granting an interlocutory sale of the AMERICANA on September 20, 2011.[3] In the days following that decision, the Court considered the proposals submitted by the parties with respect to the terms of the sale.[4] The Court scheduled the sale for Thursday, October 27, 2011 at 10:00 am.[5] The minimum bid for the sale was set at $1,000,000 with a minimum bid increment of $10,000.[6]

---

[1] R. Doc. No. 178.
[2] R. Doc. No. 180.
[3] R. Doc. No. 162.
[4] R. Doc. No. 168; R. Doc. No. 169; R. Doc. No. 170.
[5] R. Doc. No. 172; R. Doc. No. 173.
[6] R. Doc. No. 172.

On October 14, 2011, Calmore filed a notice of appeal with respect to the order for interlocutory sale and it now seeks a stay pending the resolution of that appeal.[7] Calmore does not appear to dispute whether the three criteria for an interlocutory sale were satisfied under Supplemental Admiralty Rule E(9)(a)(i).[8] Instead, Calmore argues that Buck Kreihs did not have the right to compel an interlocutory sale because it settled its maritime lien claims.[9] As explained below, the Court finds that Calmore has presented a substantial case on the merits of a serious legal question and that the balance of equities weighs heavily in favor of granting a stay pending its resolution.

## LAW AND ANALYSIS

In *National Treasury Employees Union v. Von Raab,* 808 F.2d 1057 (5th Cir.1987), the Fifth Circuit described four factors to be considered when determining whether a stay pending appeal should issue:

> In order to obtain a stay pending appeal the moving party must demonstrate: (1) that it is likely to succeed on the merits; (2) that it would suffer irreparable injury if the stay were not granted; (3) that granting the stay would not substantially harm the other parties; and (4) that granting the stay would serve the public interest. *See, e.g.*, *United States v. Baylor University Medical Center*, 711 F.2d 38, 39 (5th Cir. 1983), *cert. denied,* 469 U.S. 1189, 105 S. Ct. 958, 83 L. Ed. 2d 964 (1985). However, this court has not applied these factors in a rigid, mechanical fashion. *See Baylor University Medical Center*, 711 F.2d at 39. "Indeed, in *Ruiz v. Estelle,* 650 F.2d 555 (5th Cir. 1981), this Court held that the movant 'need only present a substantial case on the merits when a serious legal question is involved and show that the balance of equities weighs heavily in favor of granting the stay.' " *Baylor University Medical Center*, 711 F.2d at 39 (citing *Ruiz,* 650 F.2d at 565).

---

[7] R. Doc. No. 177.
[8] R. Doc. No. 178.
[9] R. Doc. No. 178.

*Nat'l Treasury Emps. Union*, 808 F.2d at 1059.  *See also Arnold v. Garlock, Inc.*, 278 F.3d 426, 438-39 (5th Cir. 2001).   Upon review of the criteria for granting a stay of the judgment pending appeal, the Court finds that Calmore has sufficiently demonstrated that it is entitled to a stay.

### A. *Is Calmore Likely to Succeed on the Merits?*

The first factor is whether the party moving for a stay is "likely to succeed on the merits." With respect to this factor, the court in *Ruiz v. Estelle,* 650 F.2d 555, 565-66 (5th Cir. Unit A June 26, 1981) noted:

> [T]he movant need not always show a 'probability' of success on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay.... Of course, if the balance of equities ( *i.e.,* consideration of the other three factors) is not heavily tilted in the movant's favor, the movant must then make a more substantial showing of likelihood of success on the merits in order to obtain a stay pending appeal.

This case presents the unresolved question of whether an interlocutory sale is available to Buck Kreihs under the Supplemental Admiralty Rules as either a "party" or "other person having custody of the property" despite the fact that it settled its maritime lien claims.  *See* Supplemental Admiralty Rule E(9)(a)(i).  The Court finds that Calmore has presented a substantial case on the merits of this question and that the balance of equities weighs heavily in favor of granting a stay pending its resolution.  Calmore stands to suffer irreparable harm from the loss of its ship at an interlocutory sale.  In contrast, the stay threatens no comparable harm to the other parties or the public interest.  Accordingly, the first factor is satisfied because a serious legal question is involved and the balance of equities is heavily tilted in Calmore's favor.

### B. *Will Calmore sustain irreparable injury without a stay?*

The second factor is whether Calmore will sustain irreparable injury without a stay. "By definition, 'irreparable injury' is that for which compensatory damages are unsuitable." *Wildon v. Berwick Universal Pictures*, 983 F.2d 21, 24 (5th Cir. 1992). Calmore argues that allowing the sale to proceed would extinguish its rights to title and possession of the AMERICANA. *See Silver Star Enters. Inc. v. M/V Saramacca*, 19 F.3d 1008, 1013 (5th Cir. 1994) ("[T]he sale order effectively terminate[s] [the vessel owner's] rights to title and possession . . . ."). Calmore also argues that the sale will deprive it of the opportunity to sell the vessel at its estimated value of $5.5 million, leaving it with no recourse on appeal. *See id.* ("[T]he sale order affects rights that will be irretrievably lost in the absence of an immediate appeal.").

Calmore has sufficiently demonstrated that it will sustain irreparable injury without a stay. The interlocutory sale threatens to deprive Calmore not only of its right to title and possession of the ship, itself, but also the opportunity to sell the ship on its own terms. Although Buck Kreihs argues that the proposed credit bids would effectively increase the minimum bid to more than $4 million,[10] Calmore still stands to lose approximately $1.5 million in the interlocutory sale. Unless a stay is granted, Calmore's ability to sell the vessel at a price it finds acceptable will be "irretrievably lost." *See id*. Accordingly, the second factor weighs heavily in favor of granting the stay.

### C. *Will the issuance of a stay substantially harm the other parties?*

The third factor is whether the issuance of a stay will substantially harm the other parties. The only party opposing the stay is Buck Kreihs, the "unwilling and uncompensated custodian"

---

[10] Sea Lion Marine, Ltd. ("Sea Lion") intervened as the holder of a post-arrest mortgage on the vessel. R. Doc. No. 167. Sea Lion seeks authorization to credit bid the unpaid debt secured by its Panamanian Preferred Ship Mortgage in the sum of $3,500,000.00. R. Doc. No. 181. Sea Lion proposed "to pay cash new money into the Registry of the Court all custodial legis expenses and all maritime liens senior in priority to its preferred ship mortgage." R. Doc. No. 181. Buck Kreihs objected to the precise amount of money Sea Lion proposed to deposit to cover its custodial expenses. R. Doc. No. 184. Belle Chasse Marine Transportation, Inc. and Calmore expressed no objections to Sea Lion's proposed credit bid. R. Doc. No. 181.

of the AMERICANA.[11]  Buck Kreihs argues that granting the stay will force it to continue harboring "an unseaworthy vessel that takes up valuable wharf space, requiring Buck Kreihs to turn away paying customers."[12]

Although the Court acknowledges the cost of holding the ship under arrest, Buck Kreihs will have the opportunity to recover its claims for custodial expenses should its right to an interlocutory sale be affirmed on appeal.  Assuming its claims qualify for preferential treatment as reasonable *custodia legis* expenses, it is unlikely that the sale of a ship valued at approximately $5.5 million would be insufficient to fully compensate Buck Kreihs for its services.  Moreover, the stay will have no effect on the rights of the other parties to avoid the mounting costs of arrest by compelling a sale of the ship based on their own maritime lien claims.  Accordingly, the third factor weighs heavily in favor of granting the stay.

### D.      *Will the public interest be served by a stay?*

The final factor is whether granting the stay will serve the public interest. This Court has recognized the public interest in minimizing the cost of holding vessels under arrest.  *See Freret Marine Supply v. M/V Enchanted Capri*, No. 00-3805, 2001 WL 649764, at *1, *4 (E.D. La. June 11, 2001) (Clement, J.).  Granting a stay pending the resolution of Calmore's appeal will not undermine that interest.  At least two other parties have asserted maritime liens that may provide a basis to move for interlocutory sale while the appeal is pending.  The public interest will be sufficiently protected by these parties, who hold the same interest as the public in avoiding the mounting cost of holding the vessel under arrest.  In the meantime, the public interest will be served by protecting Calmore from irreparable harm and maintaining the status quo.  Accordingly, the fourth factor weighs heavily in favor of granting the stay.

---

[11] R. Doc. No. 180.
[12] R. Doc. No. 180.

6

Considering the foregoing,

**IT IS ORDERED** that the motion to stay is **GRANTED** and that the interlocutory sale of the AMERICANA is **STAYED**.

New Orleans, Louisiana, October 26, 2011.

*[signature]*

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE